UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

LASZLO ROVO JR,

              Plaintiff,

    v.

Nancy A Berryhill, Deputy Commissioner
of Social Security Operations,

              Defendant.

Case No. 3:17-cv-05749-TLF

ORDER REVERSING AND
REMANDING FOR FURTHER
ADMINISTRATIVE PROCEEDINGS

      Plaintiff has brought this matter for judicial review of defendant's denial of his

applications for disability insurance benefits. The parties have consented to have this matter

heard by the undersigned Magistrate Judge. 28 U.S.C. § 636(c), Federal Rule of Civil Procedure

73; Local Rule MJR 13.

      For the reasons set forth below, the Court concludes that the Administrative Law Judge

("ALJ") erred when he did not provide specific and legitimate reasons for rejecting the opinions

of treating physician Dr. Jeff Hooper, D.O. and examining physician Dr. Jennifer Severns, Ph.D.,

and that the ALJ's error was harmful. The Court therefore finds that defendant's decision to deny

benefits should be reversed, and that this matter should be remanded for further administrative

proceedings.

<u>FACTUAL AND PROCEDURAL HISTORY</u>

      On November 4, 2013, plaintiff filed an application for disability insurance benefits

alleging that he became disabled beginning November 1, 2011. Dkt. 5 Administrative Record

(AR) 174-76. The application was denied on initial administrative review and on reconsideration. AR 62-70. A hearing was held on May 13, 2016 before ALJ Gary Elliott at which plaintiff appeared and testified, as did a vocational expert. AR 45-61.

In a written decision dated June 8, 2016, the ALJ documented his analysis at each of the five steps. AR 7-36. Steps one and two were resolved in plaintiff's favor. AR 12. At step three, the ALJ found that plaintiff had the following severe impairments: degenerative disc disease of the cervical and lumbar spine, major depressive disorder, generalized anxiety disorder, panic disorder with agoraphobia, narcotic dependence, and somatic symptom disorder, but that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. AR 12-13. The ALJ considered plaintiff's residual functional capacity (RFC) and found at step four that plaintiff could not perform his past relevant work. AR 14-25. But the ALJ found at step five that plaintiff could perform jobs that exist in significant numbers in the national economy and therefore he was not disabled. AR 26-27.

Plaintiff's request for review was denied by the Appeals Council on July 18, 2017, making the ALJ's decision the final decision of the Commissioner, which plaintiff then appealed in a complaint filed with this Court on September 15, 2017. AR 1-6; Dkt. 1; 20 C.F.R. §§ 404.981, 416.1481.

Plaintiff seeks reversal of the ALJ's decision and remand for an award of benefits, or in the alternative for further administrative proceedings, arguing the ALJ erred: (1) in failing to adequately account for plaintiff's headaches and cognitive disorders as impairments in the RFC; (2) failed to adequately analyze why plaintiff did not meeting listing 1.04; and (3) in evaluating the medical opinion evidence. Dkt. 7 at 1-2.

## DISCUSSION

The Commissioner's determination that a claimant is not disabled must be upheld if the "proper legal standards" have been applied, and the "substantial evidence in the record as a whole supports" that determination. *Hoffman v. Heckler*, 785 F.2d 1423, 1425 (9th Cir. 1986); *see also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Carr v. Sullivan*, 772 F.Supp. 522, 525 (E.D. Wash. 1991). "A decision supported by substantial evidence nevertheless will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision." *Carr*, 772 F.Supp. at 525 (citing *Brawner v. Sec'y of Health and Human Sers.*, 839 F.2d 432, 433 (9th Cir. 1987)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted); *see also Batson*, 359 F.3d at 1193.

The Court must consider the administrative record as a whole. *Garrison v. Colvin,* 759 F.3d 995, 1009-10 (9th Cir. 2014). The Court is required to weigh both the evidence that supports, and evidence that does not support, the ALJ's conclusion. *Id.* The Commissioner's findings will be upheld "if supported by inferences reasonably drawn from the record." *Batson*, 359 F.3d at 1193. Substantial evidence requires the Court to determine whether the Commissioner's determination is "supported by more than a scintilla of evidence, although less than a preponderance of the evidence is required." *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). "If the evidence admits of more than one rational interpretation," that decision must be upheld. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). That is, "[w]here there is conflicting evidence sufficient to support either outcome," the Court "must affirm the decision actually made." *Allen*, 749 F.2d at 579 (quoting *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971)).

I.    The ALJ's Evaluation of Plaintiff's Back Impairment and Listing 1.04

Plaintiff alleges that the ALJ committed harmful error in his step three analysis of Listing 1.04. Dkt. 7 at 9-10. Defendant contends that there is no error, and that even if the ALJ erred, the error was harmless. Dkt. 8 at 2-4.

At step three of the sequential disability evaluation process, the ALJ must evaluate the claimant's impairments to see if they meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). *See* 20 C.F.R § 404.1520(d), § 416.920(d); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If any of the claimant's impairments meet or medically equal a listed impairment, he or she is deemed disabled. *Id*.  The burden of proof is on the claimant to establish he or she meets or equals any of the impairments in the Listings. *See Tackett*, 180 F.3d at 1098.  "A generalized assertion of functional problems," however, "is not enough to establish disability at step three." *Id.* at 1100 (citing 20 C.F.R. § 404.1526).

A mental or physical impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508, § 416.908.  It must be established by medical evidence "consisting of signs, symptoms, and laboratory findings." *Id.; see also* SSR 96-8p, 1996 WL 374184 *2 (determination that is conducted at step three must be made on basis of medical factors alone).  An impairment meets a listed impairment "only when it manifests the specific findings described in the set of medical criteria for that listed impairment." Social Security Ruling ("SSR") 83-19, 1983 WL 31248 *2.

An impairment, or combination of impairments, equals a listed impairment "only if the medical findings (defined as a set of symptoms, signs, and laboratory findings) are at least

equivalent in severity to the set of medical findings for the listed impairment." *Id.; see also Sullivan v. Zebley,* 493 U.S. 521, 531 (1990) ("For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment.") (emphasis in original). However, "symptoms alone" will not justify a finding of equivalence. *Id.* The ALJ also "is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence." *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005).

The ALJ need not "state why a claimant failed to satisfy every different section of the listing of impairments." *Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990) (finding ALJ did not err in failing to state what evidence supported conclusion that, or discuss why, claimant's impairments did not meet or exceed Listings). This is particularly true where, as noted above, the claimant has failed to set forth any reasons as to why the Listing criteria have been met or equaled. *Lewis v. Apfel*, 236 F.3d 503, 514 (9th Cir. 2001) (finding ALJ's failure to discuss combined effect of claimant's impairments was not error, noting claimant offered no theory as to how, or point to any evidence to show, his impairments combined to equal a listed impairment).

At step three, the ALJ found that plaintiff did not have an impairment or condition of impairments that met or medically equaled the severity of one of the listings, specifically: Listings 1.02, 1.04, the kidney Listings, and the mental health Listings. AR 13-14. With respect to Listing 1.04, the ALJ found that the medical evidence did not establish the "requisite evidence of nerve root compression, spinal arachnoiditis or lumbar spinal stenosis as required under listing

1.04. Moreover, the ALJ found no evidence that the claimant's back disorder has resulted in an inability ambulate effectively, as defined in 1.00(B)(2)(b)." AR 13.

Plaintiff challenges the ALJ's step three determination, contending that the inability to ambulate effectively, as defined in 100(B)(2)(b), is only required to meet Listing 1.04(C). Thus, plaintiff asserts he could have met Listing 1.04(A) or 1.04(B) despite the lack of evidence of inability to ambulate effectively. Dkt. 7 at 10. However, plaintiff has failed to set forth any evidence to show how the Listing criteria for 1.04(A) or 1.04(B) have been met or equaled. *Lewis*, 236 F.3d at 514.

Plaintiff does not refer to any medical evidence in support of his argument, nor does he point to any medical opinion that used or interpreted his medical records to find that he has an impairment or combined impairments which meet or medically equal those Listing criteria. Therefore, the plaintiff has not met his burden of demonstrating that his symptoms met or equaled all of the criteria of Listing 1.04. *See Bowen v. Yuckert,* 482 U.S. 137, 145-152 119 (1987) (placing burden on claimant to produce evidence that impairment meets listing). Accordingly, the Court concludes that the ALJ did not err at step three of the sequential analysis.

II.      The ALJ's Evaluation of the Medical Opinion Evidence

Three types of physicians may offer opinions in Social Security cases: "(1) those who treat[ed] the claimant (treating physicians); (2) those who examine[d] but d[id] not treat the claimant (examining physicians); and (3) those who neither examine[d] nor treat[ed] the claimant (non-examining physicians)." *Lester,* 81 F.3d at 830. A treating physician's medical opinion is controlling, as long as it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the claimant's] case record." *Trevizo v. Berryhill,* 871 F.3d 664, 675 (9th Cir. 2017) (quoting 20 C.F.R. §

404.1527(c)(2)). A treating physician's opinion is generally entitled to more weight than the opinion of a doctor who examined but did not treat the plaintiff, and an examining physician's opinion is generally entitled to more weight than that of a non-examining physician. *Lester,* 81 F.3d at 830.

An ALJ need not accept the opinion of a treating physician when it is brief, conclusory, and lacks adequate support in objective medical findings and the record as a whole. *Batson,* 359 F.3d at 1195. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." *Lester,* 81 F.3d at 830-31; *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).

If a treating or examining physician's opinion is not contradicted, the ALJ may only reject that opinion if the ALJ provides clear and convincing reasons. *Trevizo,* 871 F.3d at 675. Even when a treating or examining physician's opinion is contradicted, an ALJ may only reject that opinion "by providing specific and legitimate reasons that are supported by substantial evidence." *Trevizo*, 871 F.3d at 675 (quoting *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)). However, the ALJ "need not discuss *all* evidence presented" to him or her. *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." *Id.*

"[A]n ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *Garrison v. Colvin*, 759 F.3d 995, 1012-13 (9th Cir. 2014) (citing *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996)). As the Ninth Circuit has stated:

To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim. The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct.

*Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988) (internal footnote omitted).

      a.      <u>Dr. Hooper – Treating Physician</u>

Plaintiff contends that the ALJ should have given greater weight to the opinion of Jeff Hooper, D.O. Dkt. 7 at 11-13. The Court agrees.

Dr. Hooper, who was plaintiff's treating physician for approximately five years, submitted a letter dated January 5, 2015, opining:

. . . . [Plaintiff] has been suffering from back pain for as long as I have followed him. He suffered an injury on June 18, 2010 which injured his back further. He was unable to work from that point.

The physical injury led to a great deal of stress and anxiety and eventually severe depression as well. He has been followed by psychiatry and they have assessed him as being unable to hold down a job and describe him as mentally disabled to work. My assessment of his mental status is in concordance with this. He is unable to manage his medications at home (his wife needs to manage them), and is not organized enough to routinely get himself to any sort of regular job.

AR 1421. The ALJ assigned little weight to Dr. Hooper's opinion because: (1) he included "very little analysis"; (2) treatment records show "rare instances" of plaintiff acting confused or bizarrely often in the context of drug or alcohol use, but this was not typical behavior; (3) plaintiff complained of anxiety and mental difficulties throughout the treatment record, but given the evidence for secondary gain and plaintiff's tendency to mislead others, such reports are found to be of less value; and (4) the findings of examining physician Dr. Michael Friedman, M.D., were more consistent with the record as a whole than Dr. Hooper's findings. AR 24. None of these reasons are specific and legitimate or supported by substantial evidence.

"The medical opinion of a claimant's treating doctor is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimants] case record.'" *Revels v. Berryhill,* 874 F.3d 648, 654 (9th Cir. 2017), quoting 20 C.F.R. § 404.1527(c)(2); *See Garrison,* 759 F.3d at 1012-13 (an ALJ may not manufacture a conflict between the treating physician's opinions and other medical opinions; the ALJ is required to set forth his or her own interpretations, explain why one medical opinion is more credible than another, and do more than using boilerplate language to criticize the treating physician's reports and opinions). The ALJ should still give deference to the opinion of a treating physician, even when there are other opinions that may not be in agreement with the treating physician's. *Garrison,* at 1012.

First, Dr. Hooper's opinion cannot be rejected as conclusory considering the record as a whole. *Batson*, 359 F.3d at 1195. For instance, two other physicians diagnosed plaintiff with depression, anxiety, and panic disorder. AR 889 (Dr. Jennifer Severns, Ph.D.), 918 (Dr. Jeff Hart, M.D.). Similarly, Dr. Severns and Dr. Hart corroborate Dr. Hooper's conclusion that plaintiff is not able to obtain regular employment. AR 889 (Dr. Severns opined that plaintiff was functioning at a level at which most people would need help on a regular basis to complete basic tasks of living, and that plaintiff may need support from his wife or a case worker to manage financial matters and his medical needs.), 918 (Dr. Hart opined that plaintiff is "totally unemployable").

The record as a whole does not support the ALJ's determination that there were only "rare" circumstances when plaintiff acted confused or bizarrely. For example, Dr. Daniel J. Wanwig, M.D., and Dr. Roy Chowdhury, M.D., based on examinations and interview of plaintiff and plaintiff's wife in early November of 2011, found that plaintiff was severely depressed, had

problems with his esophagus and with pneumonia, was hospitalized due to respiratory failure and kidney malfunction resulting from overdose and multiple drug interactions, had been driving erratically and threatened to harm himself with a household gun; ultimately the doctors recommended that plaintiff should be discharged to the in-patient psychiatric unit on November 12, 2011. AR 591-602, 619-620.

According to Dr. Severns examination of plaintiff on May 21, 2013 and her review of a set of plaintiff's medical records going back one year, it appears that plaintiff's odd behavior was not "rare": Dr. Severns noted that plaintiff "was admitted to the emergency room in August, 2012 after being found covered in dirt and wandering in front of the local fire station with abrasions to his forehead and cervical tenderness." AR 886. In addition, plaintiff sobbed and behaved oddly during psychological testing, with no mention of drug or alcohol use, stating that he was confused and could not continue during one point of the test. AR 886-888. Dr. Severns recommended "that the claimant be thoroughly assessed by a neurologist to identify any ongoing debilitating conditions and to rule out delirium." AR 891. Dr. Severns also stated that "[t]he claimant comes across quite well given his cognitive deficits, so medical providers should be aware that he is not able to understand clearly or remember what it is that they are telling him." AR 891. Dr. Severns noted that plaintiff had not been able to drive for the past two years due to mental difficulties, he had lost almost all of his teeth, and he was in need of help with his daily medications, medical and financial decision-making needs. AR 881, 883, 886, 890.

Likewise, Dr. William J. Charlstrom, Ph.D., a psychologist, evaluated plaintiff in February of 2015 and found that "[plaintiff's] overall appearance was unkempt. . . . There was no indication of malingering or factitious behavior. . . . He had a sad affect". AR 1431. Dr. Charlstrom also observed that plaintiff has recurring suicidal ideation, and "has made little

improvement over the last 4 or 5-years." AR 1432. Dr. Charlstrom found that plaintiff has "significant memory problems, whose etiology cannot be determined, because they could have several causes." AR 1433. Dr. Charlstrom opined that "[h]e isolates himself and would not be able to get along with supervisors or others in a work situation. He would have difficulty following even simple instructions." AR 1433.

While the ALJ acknowledged that plaintiff complained of anxiety and mental difficulties, the ALJ failed to mention these portions of the record, and thus, erred in rejecting Dr. Hooper's opinion as unsupported by objective evidence. *See Gallant v. Heckler,* 753 F.2d 1450, 1455–56 (9th Cir.1984) (the ALJ must not "reach a conclusion first, and then attempt to justify it by ignoring competent evidence in the record that suggests an opposite result"); *Vincent;* 739 F.2d at 1395 (the ALJ must explain why "significant probative evidence has been rejected.").

Second, Dr. Hooper's records show only one instance of plaintiff acting confused or bizarrely in the context of drug or alcohol use AR 1344 (in a record dated June 30, 2014, Dr. Hooper states that plaintiff drank too much, was suicidal; see also AR 1210, Saint Anthony Hospital records, showing that plaintiff brandished a firearm, was tazed by police and was taken to the emergency room), yet the ALJ fails to explain why or how this contradicts Dr. Hooper's opinion. *See Trevizo,* 871 F.3d at 676 (internal citation omitted). This falls short of the "specific and legitimate reasons" required to reject Dr. Hooper's opinion. *McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989) (an ALJ's rejection of a physician's opinion on the ground that it was contrary to clinical findings in the record was "broad and vague, failing to specify why the ALJ felt the treating physician's opinion was flawed").

Third, concerning the ALJ's finding that plaintiff was motivated by secondary gain and that Dr. Friedman's opinion was more consistent with the overall record, the Court concludes

that this is neither a specific and legitimate reason nor is it supported by substantial evidence; therefore the ALJ improperly discredited Dr. Hooper's opinion. Fundamentally, the record presents ambiguity as to whether plaintiff is motivated by secondary gain. *See* AR 63-69; 71-85; 889, 918, 1366-1379. However, the ALJ's decision does not contain an interpretation of this ambiguous evidence. There is no detailed explanation as to why the ALJ rejected Dr. Hooper's opinion in this regard. First, the ALJ's decision failed to discuss with any specificity how the evidence of secondary gain and plaintiff's "tendency to mislead others" was inconsistent with Dr. Hooper's opinion. AR 24; *Trevizo,* 871 F.3d at 676 (internal citation omitted). The ALJ's decision also failed to identify how the opinion of Dr. Friedman undermined the findings and opinion of Dr. Hooper. *See id.*

As discussed above, Dr. Hooper's opinion is supported by the record. AR 889, 918. Therefore, the Court finds that the ALJ's conclusory reason for rejection of Dr. Hooper's opinion is insufficient. *See Embrey*, 849 F.2d at 421-22 ("it is incumbent on the ALJ to provide detailed, reasoned, and legitimate rationales for disregarding the physicians' findings[;]" conclusory reasons do "not achieve the level of specificity" required to justify an ALJ's rejection of an opinion); *Jaquay v. Berryhill,* 2017 WL 3503347, at *3 (W.D. Wash. Aug. 16, 2017) (finding that an ALJ's failure to discuss how evidence of secondary gain was inconsistent with an examining physician's findings did not meet the level of specificity required to reject the opinion).

"[H]armless error principles apply in the Social Security context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). An error is harmless, however, only if it is not prejudicial to the claimant or "inconsequential" to the ALJ's "ultimate nondisability determination." *Stout v. Commissioner, Social Security Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *see Molina*, 674

F.3d at 1115. The determination as to whether an error is harmless requires a "case-specific application of judgment" by the reviewing court, based on an examination of the record made "'without regard to errors' that do not affect the parties' 'substantial rights.'" *Molina*, 674 F.3d at 1118-19 (quoting *Shinseki v. Sanders*, 556 U.S. 396, 407 (2009)).

If the ALJ's decision had properly considered Dr. Hooper's opinion, then additional limitations would possibly have been included in the RFC and in the hypothetical questions posed to the vocational experts ("VE"). *See* AR 14-15, 53-61. For example, Dr. Hooper opined that plaintiff could not routinely get himself to a regular job. AR 1421. The RFC did not contain this limitation. AR 14-15. The VE testified that if an individual limited to light work could only perform their job at 80 percent of an eight-hour workday or 40-hour workweek, the individual would be at a high risk of termination. AR 59. Therefore, the ALJ's error is not harmless and a remand is required for further consideration of Dr. Hooper's opinion.

  b.  <u>Dr. Severns – Examining Physician</u>

Plaintiff alleges the ALJ erred in rejecting the opinion of examining physician, Dr. Severns.[1] Dkt. 7 at 12-13. Again, the Court agrees.

Dr. Severns examined plaintiff in May 2013. AR 881. She reviewed plaintiff's symptoms and conducted a clinical interview and two psychometric tests. AR 888-89. Dr. Severns diagnosed plaintiff with cognitive disorder not otherwise specified, possibly due to delirium but more likely due to serotonin syndrome, stroke, and septic shock; benzodiazepine addiction; major depression; generalized anxiety disorder; panic disorder with agoraphobia; and post-traumatic stress syndrome. AR 889.

---

[1] The ALJ erroneously refers to Dr. Severns as Dr. Stevens. *See* AR 2, 881.

Dr. Severns opined that plaintiff's scores on the psychometric tests were at the very lowest end of the borderline intellectual functioning range or within the intellectually deficient range. AR 889. She opined that plaintiff has "clearly undergone severe intellectual deterioration, … to now functioning at a level at which most would need help on a regular basis to complete the basic tasks of living." AR 889. Dr. Severns opined that plaintiff cannot manage his own money and would need a payee, but that he would be able to get along with others and authority figures, and could follow directions in a three-step command situation. AR 890. Dr. Severns recommended that plaintiff's wife manage all of his medications because plaintiff is cognitively unable to do so, and because he may have a lingering issue with addiction. AR 890.

The ALJ assigned Dr. Severn's opinion little weight because: (1) she did not have the benefit of the entire medical record; (2) plaintiff was motivated by secondary gain; and (3) the opinions of Dr. Friedman and the State agency psychological doctors were more consistent with the overall record. AR 23.

The ALJ correctly noted that Dr. Severns was not familiar with the entire record. AR 23. The extent to which a doctor is familiar with other information in a claimant's case record is a relevant factor in deciding the weight to give to a medical opinion. *See* 20 C.F.R. § 404.1527(c); 20 C.F.R. § 416.927(c)(6). However, it is just one of the factors the ALJ can consider in weighing a medical opinion. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c); *see also Boghossian v. Astrue*, 2011 WL 5520391, at *4 (C.D. Cal. Nov. 14, 2011) (stating that a limited review of the record is not sufficient by itself to reject a treating physician's opinion). Indeed, "the opinion's supportability, consistency with the record, and other relevant factors may warrant giving weight to that opinion despite the absence of medical records for review." *Pyle v. Colvin*, 2014 WL 1029845, at *7 (C.D. Cal. Mar. 14, 2014).

Here, Dr. Severns does not identify the specific records she reviewed – she only states that she reviewed the previous year's medical records. AR 886. But because her examination was conducted in May 2013, the evidence referenced by the ALJ – including that of secondary gain and that plaintiff would often present as more limited than he really was – post-dates Dr. Severns' opinion. AR 63-69 (State agency psychological doctor Dr. Carla Van Dam, Ph.D.'s opinion dated August 18, 2014); 71-85 (State agency psychological doctor Dr. John Robinson, Ph.D.'s opinion dated June 1, 2015); 1366-1379 (Dr. Friedman's opinion dated November 6, 2014).

Therefore, the issue is not that Dr. Severns' review was improper or too narrow, but rather, that she could not possibly have an opportunity to review medical records that were not yet created – because those records were developed after her own. Standing alone, this is an insufficient reason to reject Dr. Severns' opinion. *See Boghossian*, 2011 WL 5520391, at *4 (a limited review of the record is not sufficient by itself to reject a treating physician's opinion); *Ann Cox v. Colvin*, 2015 WL 8596436, at *13 (N.D. Cal. Dec. 14, 2015) (the fact that a physician reviewed all of the medical evidence in existence at the time was not a sufficient reason to reject his opinion).

With respect to the ALJ's finding that plaintiff was motivated by secondary gain and that Drs. Friedman, Van Dam and Robinson's opinions were more consistent with the overall record, the Court concludes that this is not a specific and legitimate reason supported by substantial evidence to discredit Dr. Severn's opinion. As noted above, the record is ambiguous as to whether plaintiff is, or is not, motivated by secondary gain. *See* AR 63-69; 71-85; 889, 918, 1366-1379.

However, in resolving this conflict by crediting the suggestions that plaintiff was

exaggerating his mental health symptoms, the ALJ failed to discuss with any specificity *how* Dr. Severns' opinion conflicted with evidence of secondary gain or he opinion that plaintiff presented in a manner that seemed intended to show his limitations were more severe than he actually experienced. AR 23; *Trevizo,* 871 F.3d at 676 (internal citation omitted). The ALJ also merely offered a conclusion about the little weight given to Dr. Severns' opinion, without explaining *how* Dr. Severns' opinion was inconsistent with the record as a whole. As the United States Court of Appeals for the Ninth Circuit has observed, mental illness "symptoms wax and wane in the course of treatment." *Garrison,* 759 F.3d at 1017.

Therefore, the Court concludes that this conclusory reasoning constitutes an insufficient basis on which to give little weight to Dr. Severns' opinion. *See Embrey*, 849 F.2d at 421-22 ("it is incumbent on the ALJ to provide detailed, reasoned, and legitimate rationales for disregarding the physicians' findings[;]" conclusory reasons do "not achieve the level of specificity" required to justify an ALJ's rejection of an opinion); *McAllister*, 888 F.2d at 602 (an ALJ's rejection of a physician's opinion on the ground that it was contrary to clinical findings in the record was "broad and vague, failing to specify why the ALJ felt the treating physician's opinion was flawed").

Moreover, as discussed above with respect to Dr. Hooper, although the ALJ found that Drs. Friedman, Van Dam, and Robinson's opinions were more consistent with the record as a whole, and that those physicians have greater longitudinal perspective into plaintiff's mental functioning, the ALJ did not provide any reasoning to resolve the ambiguity, and ignored the substantial evidence showing that Dr. Severns' opinion is corroborated by both Dr. Hart and Dr. Hooper. *See* AR 889, 918, 1421. Therefore, the ALJ erred in rejecting Dr. Severns' opinion as unsupported by objective evidence. *See Gallant,* 753 F.2d at 1455–56.

Had the ALJ properly considered Dr. Severn's opinion, he may have included additional limitations in the RFC and in the hypothetical questions posed to the vocational experts ("VE"). *See* AR 14-15, 56-61. For example, Dr. Severn opined that plaintiff could barely live independently and would need a payee. AR. 889-890. If the ALJ properly considers Dr. Severns' opinion, it would follow that the ALJ may include additional limitations in the RFC. Therefore, the ALJ's error with respect to Dr. Severns' opinion is not harmless and requires reversal. *Stout*, 454 F.3d at 1055.

      c.    <u>Other Medical Source Opinions</u>

In his Opening Brief, plaintiff summarizes the ALJ's findings with respect to Dr. Friedman and Dr. Mark Suffis, M.D., which the ALJ gave great weight. *See* AR 22-24; Dkt. 7 at 10-13. Plaintiff does not challenge Dr. Suffis' opinion that was limited to plaintiff's non-psychiatric conditions. Dkt. 7 at 10-13; AR 22, 1422-1428.

With respect to Dr. Friedman, plaintiff contends that the ALJ should have given more weight to the opinions of Drs. Hooper and Severns, instead of giving great weight to the opinion of Dr. Friedman. Dkt. 7 at 10-13. Because the Court concludes that the ALJ erred in assigning little weight to the opinions of Drs. Hooper and Severns, the ALJ should also re-evaluate Dr. Friedman's opinion on remand. *See Magallanes,* 881 F.2d at 751 (It is the ALJ's role is to evaluate the medical opinions and resolve any differences.).

III.    <u>The ALJ's Evaluation of Plaintiff's RFC</u>

The ALJ found that plaintiff had the RFC to perform light work, except that he could perform only simple, routine, and repetitive tasks and could have only occasional public and coworker contact. *Id.* Plaintiff alleges that the ALJ erred by not accounting for limitations stemming from headaches and a cognitive disorder. Dkt. 7 at 5-9.

1    If a disability determination "cannot be made on the basis of medical factors alone at step

2    three of the evaluation process," the ALJ must identify the claimant's "functional limitations and

3    restrictions" and assess his or her "remaining capacities for work-related activities." SSR 96-8p,

4    1996 WL 374184, at *2. A claimant's residual functional capacity assessment is used at step

5    four to determine whether he or she can do his or her past relevant work, and at step five to

6    determine whether he or she can do other work. *Id.* It thus is what the claimant "can still do

7    despite his or her limitations." *Id.*

8    A claimant's residual functional capacity is the maximum amount of work the claimant is

9    able to perform based on all of the relevant evidence in the record. *Id.* However, a claimant's

10   inability to work must result from his or her "physical or mental impairment(s)." *Id.* Thus, the

11   ALJ must consider only those limitations and restrictions "attributable to medically determinable

12   impairments." *Id.* In assessing a claimant's residual functional capacity, the ALJ also is required

13   to discuss why the claimant's "symptom-related functional limitations and restrictions can or

14   cannot reasonably be accepted as consistent with the medical or other evidence." *Id.* at *7.

15       a.    Cognitive Disorder

16   With respect to plaintiff's mental RFC, plaintiff alleges that the ALJ failed to account for

17   limitations regarding his ability to concentrate, persist, or maintain pace, and instead, assessed

18   plaintiff with only moderate difficulties. Dkt. 7 at 7; AR 14. The ALJ found that plaintiff

19   presented in mental testing or with medical personnel as having profound memory loss, which

20   was contradicted by Dr. Friedman's evaluation that plaintiff had symptom magnification,

21   secondary gain issues, and that plaintiff's primary issue precluding gainful employment was

22   "profound disability conviction." AR 14 (citing AR 1376). The ALJ also found that plaintiff was

23   able to drive, care for his children, and perform household chores, which were inconsistent with

24   his presentations of extreme disability. AR 14.

25

As discussed above, the ALJ erred in evaluating the medical opinion evidence, and therefore on remand the ALJ must re-evaluate that evidence, including the opinions of Drs. Hooper, Severns, and Friedman concerning plaintiff's mental functional capacity. Because of those errors, the Court cannot determine whether the ALJ's RFC assessment properly incorporated all of plaintiff's functional limitations, and thus the ALJ must reassess plaintiff's RFC on remand as well. *See Batson,* 359 F.3d at 1197. In light of this, the Court finds it appropriate that the ALJ also reconsider plaintiff's RFC with respect to his cognitive limitations.

b.    Headaches

While the ALJ did indicate that plaintiff experienced headaches, the ALJ also explained why he found not all of plaintiff's alleged limitations credible. AR 18. The ALJ specifically discussed plaintiff's testimony exaggerating the frequency with which he experienced his headaches and inferred from the fact that plaintiff did not describe such extreme headaches to his medical providers and that plaintiff was able to travel out of town and out of the state that his headaches were not as disabling as alleged. AR 18. An ALJ's RFC assessment need not account for limitations that have been properly rejected. *See Batson,* 359 F.3d at 1197 ("The ALJ was not required to incorporate evidence from the opinions of [claimant's] treating physicians, which were permissibly discounted."); *See Stubbs–Danielson v. Astrue,* 539 F.3d 1169, 1175–76 (9th Cir. 2008) (upholding ALJ's decision where the RFC omitted alleged limitations that the ALJ properly rejected). Because plaintiff's does not challenge the ALJ's adverse credibility determination, he has not established that the ALJ erred in failing to account for limitations that he indicated he found to lack credibility. *See Watson v. Carolyn*, 2013 WL 2468779, at *3 (W.D. Wash. June 7, 2013).

Even if plaintiff could establish that the ALJ erred, he fails to offer any explanation nor has he cited to any objective evidence in the record which suggests his headaches would impair

his ability to function beyond the limitations included the ALJ's RFC. Plaintiff argues, without citation to the record, that his headaches could result in an RFC that includes an additional break in the work day, or the RFC might include a restriction to prevent plaintiff from working around environmental factors that may make his headaches worse. *See* Dkt. 7 at 7. However, it is plaintiff's duty to show his headaches had more than a minimal effect on his ability to perform work duties. *See Molina*, 674 F.3d at 1111 (internal citation omitted) (" '[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination.' "). Without more specific information on how these conditions hinder plaintiff, or objective evidence to support that contention, any error by the ALJ was harmless. *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007); *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692 n. 2 (9th Cir. 2009) ("We reject any invitation to find that the ALJ failed to account for Valentine's injuries in some unspecified way."); *Collins v. Astrue*, 2009 WL 112863, at *5 (W.D. Wash. Jan.14, 2009) (error harmless "because there is no medical evidence in the record that plaintiff's headaches caused him any work-related limitations").

IV.     Remand for Further Administrative Proceedings

Plaintiff requests that the ALJ's decision with respect to plaintiff's headaches and cognitive disorder as impairments in the RFC be remanded for a new hearing to properly consider all of the relevant medical records. Dkt. 7 at 2. Plaintiff requests that the remaining issues be remanded for a new hearing, or for an award of benefits. *Id.*

"The decision whether to remand a case for additional evidence, or simply to award benefits[,] is within the discretion of the court." *Trevizo*, 871 F.3d at 682 (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)). If an ALJ makes an error and there is uncertainty and ambiguity in the record, the district court should remand to the agency for further proceedings. *Leon v. Berryhill*, 874 F.3d 1130, 1134-1135 (9th Cir. 2017). If the district court

concludes that additional proceedings can remedy the errors that occurred in the original hearing, the case should be remanded for further consideration. *Revels v. Berryhill*, 874 F.3d 648, 668 (9th Cir. 2017).

The Ninth Circuit has developed a three-step analysis for determining when to remand for a direct award of benefits. Such remand is generally proper only

> where "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand."

*Trevizo*, 871 F.3d at 682-83 (quoting *Garrison*, 759 F.3d at 1020).

The Ninth Circuit has recently applied the "credit-as-true" rule by first asking: Were the ALJ's reasons for rejecting the evidence legally insufficient? *Leon*, 874 F.3d at 1132-1133. Then, having answered that question in the affirmative, the Court considered the second step in the analysis: Are there remaining issues that must resolved before a disability determination can be made, and would further administrative proceedings be useful? *Id.* The Court confirmed that the third step would result in an award of benefits only if the questions at parts one and two of the analysis are answered yes—and crediting the improperly discredited evidence as true, further proceedings would appear to be unnecessary. *Leon,* 874 F.3d at 1133, 1135-36.

The Court in *Leon* held, even where the district court finds in the first part of the analysis that the ALJ has failed to offer sufficient reasons for rejecting evidence, and also finds in the second part of the analysis that there is a fully developed record and finally reaches the third part of the analysis and credits the rejected evidence as true, it is still within the court's discretion whether to remand for further proceedings or for award of benefits. *Id.* at 1133. If, considering the record as a whole, there are reasons for the district court to have serious doubt as to whether

the claimant is disabled, the district court retains discretion to remand to the agency for additional proceedings. *Id.* at 1133, 1135; *Revels,* 874 F.3d at 668.

The ALJ in this case erred in rejecting the evidence from Drs. Hooper and Severns. Issues regarding that evidence must be resolved and there is ambiguity in the record. The Court therefore reverses the ALJ's decision and remands this matter for further consideration of the medical evidence, plaintiff's RFC, and whether plaintiff is, or is not, disabled.

<u>CONCLUSION</u>

Based on the foregoing discussion, the Court concludes the ALJ improperly determined plaintiff to be not disabled, and remands this matter for further administrative proceedings. On remand, the ALJ is directed to conduct another hearing, review the medical evidence as a whole, and properly apply the law concerning Dr. Hooper's responsibility and role as a treating physician. On remand, the ALJ must also re-evaluate the medical evidence, including any additional relevant evidence that the parties may present, along with the existing opinions of Drs. Hooper, Severns, and Friedman concerning plaintiff's mental functional capacity. After the evidence is reviewed under the applicable legal standards, the ALJ should use the legally material and relevant evidence in the RFC determination, including any additional or clarified evidence and then determine whether plaintiff is, or is not, disabled.

Dated this 14th day of May, 2018.

*Theresa L. Fricke*
_____
Theresa L. Fricke
United States Magistrate Judge